UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

S ROCK PARTNERS, LLC,

        Plaintiff,

v.

ALESKEI KISELEV a/k/a ALEX KISELEV,

        Defendant.

Civil Action No.
3:17 - CV - 1670 (CSH)

FEBRUARY 14, 2018

## ORDER REGARDING SUBJECT MATTER JURISDICTION

**HAIGHT, Senior District Judge:**

### I. INTRODUCTION

Plaintiff S Rock Partners, LLC ("S Rock") brings this action against Defendant Aleskei Kiselev (a/k/a Alex Kiselev) for fraudulently inducing S Rock to invest the sum of $400,000 in a limited liability company ("LLC") by representing that he would fund the company with "thousands of shares of valuable stock in an engineering, utility, and power company known as Soyuz Holding S.A. ("Soyuz")."[1] Doc. 1, ¶1. Pursuant to an Equity Purchase Agreement, entered on October 8, 2015, S Rock purchased 100% of the membership interests of that LLC, which was allegedly created "for the sole purpose of receiving the Soyuz Shares." *Id.*, ¶ 3. According to Plaintiff these shares were "intended to be the LLC's sole asset, and the reason for S Rock's purchase of the LLC." *Id.*

---

[1] In particular, Kiselev allegedly "falsely promised that S Rock would quickly recoup its initial $400,000 investment and receive a dividend payment in the amount of $1.1 million, for a total return of $1.5 million." Doc. 1, ¶ 1. Moreover, Kiselev allegedly "represented that the Soyuz Shares are now worth $10,000,000." *Id.*

1

However, Kiselev never transferred the Soyuz Shares to the LLC. *Id.*, ¶ 2. Upon receiving S Rock's $400,000 investment, Kiselev sold his home in Alexandria, Virginia, and left the United States to live in Ukraine. *Id.*, ¶¶ 2, 11.

There is evidence in the record that Plaintiff served Kiselev with the summons and complaint in this action in New York City on October 5, 2017.[2] Doc. 6. Despite said service, Kiselev never appeared or responded to the Complaint. S Rock moved for entry of default by the Clerk, which was granted. Doc. 7, 8, & 9. Thereafter, pursuant to Federal Rule of Civil Procedure 55(b), S Rock moved for default judgment. Doc. 10 (filed February 8, 2018). However, before the Court may consider whether it would be proper to enter judgment, it must confirm its subject matter jurisdiction based on diversity of citizenship. To do so, the Court must have additional facts regarding the citizenship of the parties and the amount in controversy. It thus follows that Plaintiff must make additional submissions so the Court may consider the existence *vel non* of its subject matter jurisdiction.

## II. **DISCUSSION**

A.  **Subject Matter Jurisdiction**

Federal district courts are courts of limited jurisdiction under Article III, Section 2, of the United States Constitution. *See, e.g., Chicot Cnty. Drainage Dist. Baxter State Bank*, 308 U.S. 371, 376 (1940), *reh'g denied*, 309 U.S. 695 (1940). The question of subject matter jurisdiction is fundamental so that a court must raise the issue *sua sponte*, of its own accord, when the issue is not addressed by the parties. *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884). *See also*

---

[2] Based on the "Certificate of Service" affixed by Plaintiff's counsel to the "Affidavit of Service," Kiselev was also provided with notice of service electronically at addresses in both Odessa, Ukraine, and Alexandria, Virginia. Doc. 6, at 2.

*Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006) ("Although neither party has suggested that we lack appellate jurisdiction, we have an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*."), *cert. denied*, 549 U.S. 1282 (2007); *Univ. of S. Alabama v. Am. Tobacco Co.,* 168 F.3d 405, 410 (11th Cir. 1999) ("[I]t is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking").

In general, a federal district court may exercise subject matter jurisdiction over an action only if there is either: (1) "federal question" jurisdiction, applicable to "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331; or (2) there exists "diversity of citizenship," complete diversity of citizenship between the plaintiff and all defendants and the amount in controversy exceeds "the sum or value of $75,000, exclusive of interest and costs," 28 U.S.C. § 1332(a). *See also Strawbridge v. Curtiss*, 7 U.S. 267, 267-68 (1806); *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 363 (2d Cir. 2000) (delineating two categories of subject matter jurisdiction).

Unlike personal jurisdiction, "failure of subject matter jurisdiction is not waivable." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000). If subject matter jurisdiction is lacking, the action must be dismissed. *See* Fed. R. Civ. P. 12(h)(3); 211 F.3d at 700-01. *See also, e.g., Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.,* 790 F.3d 411, 416-17 (2d Cir. 2015) ("A district court properly dismisses an action . . . for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it . . . .") (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000))*; Manway Constr. Co. v. Housing Auth. of Hartford,* 711 F.2d 501, 503 (2d Cir. 1983) ("It is common ground that in our federal system of limited jurisdiction any party or the court *sua sponte*, at any stage of the proceedings, may raise

the question of whether the court has subject matter jurisdiction; and, if it does not, dismissal is mandatory.").

In order for diversity of citizenship to exist, the plaintiff's citizenship must be diverse from that of all defendants. *See, e.g.*, *St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005) ("Diversity is not complete if any plaintiff is a citizen of the same state as any defendant.") (citing *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978)). Moreover, such diversity must exist at the time the action is commenced." *Universal Licensing Corp. v. Lungo*, 293 F.3d 579, 581 (2d Cir. 2002). *See also Wolde–Meskel v. Vocational Instruction Project Comm. Servs., Inc.*, 166 F.3d 59, 62 (2d Cir.1999) ("Satisfaction of the § 1332(a) diversity requirements (amount in controversy and citizenship) is determined as of the date that suit is filed – the 'time-of-filing' rule.").

In the case at bar, there appears to be no basis for the Court to exercise "federal question" jurisdiction – *i.e.*, no claim arising under the Constitution or federal law. *See* 28 U.S.C. § 1331. Plaintiff S Rock has brought exclusively state law claims arising from Defendant Kiselev's alleged breach and/or failure to perform under the Equity Purchase Agreement. These claims include breach of contract, fraud, conversion, unjust enrichment, and specific performance. Doc. 1, at 12-15. Consequently, Plaintiff's sole asserted jurisdictional basis is "diversity of citizenship" pursuant to 28 U.S.C. § 1332(a), because, according to Plaintiff, "Plaintiff and Defendant are residents of different states and the amount in controversy . . . exceeds $75,000, exclusive of interest and costs."[3]

---

[3] The Court notes, however, that if one of the parties has foreign citizenship, the proper provision for diversity of citizenship is section 1332(a)(2), which provides:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and
costs...

Doc. 1, ¶ 12. At the outset, the Court notes that this allegation is insufficient to establish diversity of citizenship in that it is the *domicile* of the parties, as opposed to *residence,* that is the basis for determining citizenship for diversity purposes. This distinction is discussed more fully below.

In order for diversity of citizenship to exist, Plaintiff S Rock's citizenship must be diverse from that of Defendant Kiselev. *See, e.g.*, *St. Paul Fire & Marine Ins. Co.*, 409 F.3d at 80. Moreover, the "time-of-filing" rule dictates that "diversity must exist at the time the action is commenced," in this case October 3, 2017. *Universal Licensing Corp.*, 293 F.3d at 581.

Finally, to invoke "diversity of citizenship" jurisdiction, there must be a minimum amount in controversy exceeding "$75,000, exclusive of interest and costs," 28 U.S.C. § 1332(a). The burden is on the plaintiff to allege in good faith that it sustained the mandatory minimum in damages. *See, e.g.*, *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) ("A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount.") (quoting *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir.1994)).

---

costs, and is between –
 . . .
citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State.

28 U.S.C. § 1332(a)(2). Also, if neither party is a citizen of one of the United States – *i.e.*, if *both* parties are foreign nationals –there is no diversity of citizenship subject matter jurisdiction. *See F5 Capital v. Pappas*, 856 F.3d 61, 75 (2d Cir. 2017) ("[D]iversity is lacking within the meaning of [§ 1332(a)(2) ] where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens.") (quoting *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002)), *cert. denied*, __U.S.__, 138 S. Ct. 473 (2017).

The amount in controversy must "appear on the face of the complaint or be established by proof." *Miller v. European Am. Bank*, 921 F. Supp. 1162, 1167 (S.D.N.Y. 1996).

**B.	Citizenship of the Parties**

    **1.	S Rock Partners, LLC**

In the case at bar, Plaintiff S Rock has informed the Court that it is "a Delaware Limited Liability Company with its principal place of business at 1155 Chestnut Street, Suite 1C, Union, NJ 07083." Doc. 1, ¶ 10. Plaintiff has also stated that its' "principal member *resides* in Connecticut, the location where Defendant negotiated, executed, and breached the contract, and targeted his various tortious acts, as described herein." *Id.*

"The citizenship for diversity purposes of a limited liability company . . . is the citizenship of each of its members." *Wise v. Wachovia Securities, LLC*, 450 F.3d 265, 267 (7th Cir. 2006)(emphasis added), *cert. denied*, 549 U.S. 1047 (2006). That means that the "citizenship of a limited liability company is not the state in which it is organized or has its principal place of business, but rather, each of the states in which it has members." *Lewis v. Allied Bronze LLC*, No. 07 Civ. 1621(BMC), 2007 WL 1299251, at *1-2 (E.D.N.Y. May 2, 2007) (citing *Handelsman v. Bedford Vill. Assoc. Ltd. P'ship*, 213 F.3d 48, [51-52] (2d Cir.2000) and remanding removed action for lack of diversity jurisdiction).

If, as S Rock suggests, the limited liability company has members who are individuals, the citizenship of those particular individuals is attributed to the limited liability company. Here, S Rock has only provided information on its "principal member;" and even that information is not sufficient to determine the citizenship of that member. As previously stated, an individual's citizenship is not determined by his residence, but rather his *domicile*, which is "his true, fixed and permanent home

and place of habitation" – *i.e*, "the place to which, whenever he is absent, he has the intention of returning." *Martinez v. Bynum*, 461 U.S. 321, 331 (1983) (citation and internal quotation marks omitted). *See also Palazzo ex rel. Delmage v. Corio,* 232 F.3d 38, 42 (2d Cir. 2000) (An individual's citizenship for diversity purposes is determined by his or her *domicile*, as opposed to residence, because "[a]t any given time, a person has but one domicile."); *John Birch Soc. v. Nat'l Broad. Co.*, 377 F.2d 194, 199 (2d Cir. 1967) ("[I]t has long been held that a statement of residence, unlike domicile, tells the court only where the parties are living and not of which state they are citizens."). Therefore, the fact that one of S Rock's members *resides* in Connecticut does not inform the Court as to his citizenship.

Moreover, if any member of the limited liability company is an alien, in determining that member's citizenship for purposes of "diversity of citizenship," federal courts focus on "official immigration status," rather than domicile alone, *Mor v. Royal Caribbean* Cruises Ltd., No. 12 Civ. 3845(JGK), 2012 WL 2333730, at * 1 (S.D.N.Y. June 19, 2012) (gathering cases). In particular, an alien who has been accorded lawful permanent residence from the United States (*i.e.*, has obtained a "green card") is considered a citizen of the state in which he is domiciled. In contrast, one who is admitted into the United States on a temporary, non-immigrant visa (*e.g.*, as a temporary visitor for business or pleasure) is an alien for purposes of citizenship.[4] *See, e.g., Mor*, 2012 WL 2333730, at *2 (citing *Kato v. County of Westchester*, 927 F.Supp. 714, 715-17 (S.D.N.Y. 1996)).

Furthermore, if a member of the limited liability company is a corporation, pursuant

---

[4] For example, if the principal member of S Rock is an alien who has no green card, he is an alien for purposes of citizenship. If, however, that member has a green card and was domiciled in Connecticut at the time this action was commenced, that member is a citizen of Connecticut for diversity purposes in this action. If the member is an American citizen domiciled in Connecticut, he is a citizen of Connecticut.

to 28 U.S.C. § 1332(c)(1), its citizenship "shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." A corporation's principal place of business under § 1332 is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 218 (2d Cir. 2016) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010)). "In practice, this should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center.'" *OneWest Bank,* 827 F.3d at 218 (citing *Hertz,* 559 U.S. at 93) (internal quotation marks omitted).

As a limited liability company, S Rock has failed to provide the identities and citizenship of each of its members. This information must be disclosed to insure that complete diversity exists between Plaintiff and Defendant in this action.

### 2. **Aleskei Kiselev**

Plaintiff states that "Defendant Kiselev was a resident of Virginia with a home address of 1818 Carpenter Road, Alexandria, Virginia, 22314" and that "[o]n November 30, 2015, shortly after he received $400,000 from S Rock, Kiselev sold this property and left the United States. " Doc. 1, ¶ 11. Moreover, "[u]pon information and belief, Defendant currently resides in Odessa, Ukraine." *Id.*

As set forth *supra*, an individual's citizenship is his domicile, rather than his residence. *John Birch Soc.*, 377 F.2d at 199. In addition, if he is an alien, his immigration status is also considered in conjunction with his domicile. *Mor*, 2012 WL 2333730, at * 1. Furthermore, the relevant date for assessing citizenship is the date the action was commenced (*i.e.*, the date the complaint was

8

filed). *Universal Licensing Corp.*, 293 F.3d at 581.

Given these precedents, Plaintiff has failed to establish the citizenship of Kiselev. Plaintiff merely states his residence, as opposed to domicile, before November of 2015 – approximately two years before Plaintiff commenced this action on October 3, 2017. Furthermore, Plaintiff states that Kiselev "currently resides in Odessa, Ukraine," Doc. 1, ¶ 11, without indicating whether Kiselev is a citizen of Ukraine and/or whether he is domiciled there.

For example, it is possible that Kiselev is an American citizen, or the national of another country, who is residing in Ukraine but still *domiciled* in the United States. He may also be an American citizen or foreign national who is domiciled in the Ukraine – *i.e.*, living there in his "true, fixed and permanent home and place of habitation," the place where he always intends to return. *Martinez*, 461 U.S. at 331. If Kiselev is an American domiciled in Ukraine, he is considered stateless for diversity purposes. *See, e.g., Techno-TM, LLC v. Fireaway, Inc.*, 928 F.Supp. 2d 694. 697 (S.D. N.Y. 2013) ("United States citizens domiciled abroad 'are neither citizens of any state of the United States nor citizens or subjects of a foreign state, so that § 1332(a) does not provide that the courts have jurisdiction over a suit to which such persons are parties.'") (quoting *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001)).

Without knowing Kiselev's citizenship, this Court cannot ascertain whether it possesses subject matter jurisdiction over this matter. In the absence of such jurisdiction, any rulings by the Court in this action would be void. For example, if Kiselev is a citizen of Ukraine and was living there at the time Plaintiff commenced this action and any member of S Rock is a citizen of Ukraine or other foreign country, this action must be dismissed. *See* 28 U.S.C. § 1332(a). Similarly, if Kiselev is an American citizen who is residing temporarily in Ukraine, but actually intends to return

to his domicile in Virginia, and any member of Plaintiff is a citizen of Virginia, there is no diversity of citizenship and hence no subject matter jurisdiction.

C.     **Amount in Controversy**

The final requirement for "diversity of citizenship" subject matter jurisdiction is the minimum amount in controversy, which must exceed "the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The Second Circuit "recognizes a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Wolde-Meskel*, 166 F.3d at 63 (citing *Tongkook Am., Inc.*, 14 F.3d at 785-86).

In the case at bar, a review of the Complaint reveals that Plaintiff has alleged sufficient facts to allege the requisite jurisdictional amount. Under its breach of contract claim, S Rock alleges that it has been "damaged in the amount of $1,500,000 in benefit of the bargain damages given the Soyuz Shares dividends that S Rock has failed to receive." Doc. 1, ¶ 66. With respect to fraud, S Rock alleges the Defendant's fraudulent conduct "harmed S Rock by eliciting the $400,000 payment agreed to in the Purchase Agreement under false pretenses," which "subsequently depriv[ed] S Rock of over $1,500,000 in distributions, as well as the other benefits of owning Soyuz Shares, including the significant appreciation in the value of the Soyuz Shares since their original purchase." *Id.*, ¶ 72. As to conversion, Plaintiff asserts that "Kiselev's scheming and manipulation" deprived Plaintiff of the Soyuz Shares and resulted in the "conversion of $400,000 from S Rock." *Id.*, ¶ 77. In addition, regarding unjust enrichment, Plaintiff maintains that Kiselev "unjustly benefitt[ed] . . . by retaining the $400,000 payment agreed to in the Purchase Agreement under false pretenses and subsequently depriving S Rock of over $1,500,000 in distributions . . . ." *Id.*, ¶ 81. The amounts of damages Plaintiff alleges thus well exceed the jurisdictional amount.

Defendant has neither appeared nor answered in the action. However, should he later attempt to allege "bad faith" with respect to the jurisdictional amount, "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Wolde-Meskel*, 166 F.3d at 63 (citation and internal quotation marks and brackets omitted). "Legal certainty is analyzed by what appears on the face of the complaint; subsequent events – such as a valid defense offered by the defendant, or actual recovery in an amount less than the minimum jurisdictional amount – do not show plaintiff's bad faith or oust the jurisdiction." *Id.* (citation and internal quotation marks and brackets omitted). *See also Scherer*, 347 F.3d at 397 ("[T]he amount in controversy [is measured] as of the date of the complaint" so that "[o]nce jurisdiction has attached, it cannot be ousted by subsequent events.").

### III. CONCLUSION

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Therefore, in order to determine whether it has subject matter jurisdiction in this action, the Court hereby ORDERS Plaintiff S Rock Partners, LLC to establish, by affidavit, its citizenship for diversity purposes as of the date this action was commenced, on October 3, 2017.

In particular, limited liability company S Rock is ORDERED to submit an affidavit explicitly setting forth the identities and state(s) of citizenship of each of its members as of October 3, 2017. If said members are individuals, S Rock must provide their states of domicile. [5] If any members are

---

[5] With respect to any individual members, S Rock must submit an affidavit explicitly providing that individual's state of domicile on October 3, 2017. In particular, it must include: (1) the state in which the individual was domiciled and principally established or his true fixed home and (2) the names, if any, of other states in which he had a residence. If there are additional states in which the individual maintained a residence, the affidavit must further provide: (a) the locations

11

corporations, S Rock must indicate all states of incorporation and the principal place of business for each corporation. 28 U.S.C. § 1332(c)(1). If S Rock's members include any limited liability company, it shall establish the citizenship of each member of that limited liability company.

Because Defendant Kiselev has not appeared, the Court requests that S Rock inform the Court of any information it may obtain regarding his citizenship as of October 3, 2017. The Court must be informed whether Kiselev is a United States citizen or foreign national. If the former, the Court must know in which state he was domiciled at the commencement of the action. In particular, Plaintiff must state: (1) the state in which Kiselev was domiciled and principally established or his true fixed home and (2) the names, if any, of other states in which he had a residence. If there are additional states in he maintained a residence, the Court must be apprised of the locations of all such residences he kept and, if possible, (b) the approximate length of time spent at each residence.

Alternatively, if Kiselev is a foreign national who was domiciled in the United States when this action was filed, the Court must be apprised of his immigration status – whether he had obtained a green card. "[T]he district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State." 28 U.S.C. § 1332(a)(2). *See, e.g.*, *Kato*, 927 F.Supp. at 716 ("aliens who have been accorded lawful permanent resident status under the immigration laws are considered aliens 'admitted for permanent

---

of all such residences kept and (b) the approximate length of time spent at each residence. Also, if any member is a foreign national domiciled in the United States, the Court must be apprised of such individual's immigration status.

residence,' while aliens admitted to the United States on temporary non[-]immigrant visas are not.").[6]

If Kiselev is a foreign national who was domiciled abroad when Plaintiff filed its complaint, he is a citizen of a foreign state for diversity purposes. However, if on October 3, 2017, the date the Complaint was filed, Kiselev was a United States citizen *domiciled* in Ukraine, he is stateless for purposes of diversity. *See, e.g., Techno-TM, LLC.*, 928 F.Supp. 2d at 697. *See also* 1 Litigation of International Disputes in U.S. Courts § 5:8 ("Basic diversity principles") ("U.S. citizens domiciled abroad will likely find themselves stateless for purposes of diversity" and "[t]he presence of a stateless person normally destroys diversity.").

Plaintiff must file its required citizenship affidavit(s) pursuant to this Order on or before **March 14, 2018.** Upon receipt and review of Plaintiff's affidavit(s), the Court will determine whether it possesses subject matter jurisdiction. If so, the Court will issue a Ruling on Plaintiff's Motion for Default Judgment [Doc. 10]. Otherwise, in the absence of subject matter jurisdiction,

---

[6] As one esteemed commentator summarized:

> [I]t is clear that [§ 1332(a)] affects only the status of those aliens with "green cards" — admitted to the United States for permanent residence. Thus, aliens present in this country on any lesser status will still be considered aliens, able to invoke alienage jurisdiction against a citizen of a state. . . .

1 James W. Moore, Moore's Federal Practice ¶ 0.75[1.–5], at 800.56 (1991). *See also* Ved P. Nanda & David K. Pansius, 1 Litigation of International Disputes in U.S. Courts § 5:8 ("Alien Venue and Diversity") (Westlaw update Sept. 2017) ("[a]lien citizens admitted to the United States for permanent residency may be treated like (as distinguished from 'deemed') citizens as would destroy diversity for purposes of §1332(a)(2)").

the Court will dismiss the action without prejudice to Plaintiff bringing it in a proper forum.

It is SO ORDERED.

Dated: New Haven, Connecticut
February 14, 2018

/a/ *Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge